And we'll turn to Calhoun v. Borona. Mr. Regatte. Yes. Good afternoon, your honors. We're pleased to court. My name is Raymond Regatte. I represent the police officers in this matter. Judge Cabran has reserved two minutes for rebuttal. When Mr. Calhoun decided, made the choice to take a gun and smash it through the window of a parked car at a CVS parking lot with three women inside the car, his act created an exigence action, and it created exigent circumstances to go in and get him from the residence that police officers had clear probable cause to know he was present inside. For that reason alone, the police defendants are entitled to qualified immunity because there was no Fourth Amendment deprivation. The search, the entry and the arrest was simply not illegal under those drastic circumstances. The district court opinion below suggests taking from the decision in Lauria that in minor offenses, exigency is not present. I'm sorry. Can I just jump in? The thing that I'm having an issue with is you've described this as an urgent situation. Yes. If this situation was, in fact, urgent, why did the police wait for 20 minutes before they entered the home? And even at that point, the entry was dictated not be by a change in circumstance or to hear noise inside the home or anything of that sort. Just the fact that a different officer arrived on the scene, 20 minutes does not suggest urgency to me. In 20 minutes, it's possible to obtain a warrant, isn't it? Well, it may be. It may not be. It can take hours, if not longer, to get a search warrant. But it's also possible at times to make a phone call if there's an urgent situation and get a warrant. I guess, aside from that, 20 minutes does not seem urgent to me if they're waiting that long. Well, I think the thing, the confusion in the case is the way this kind of went down. There's a call, two callers, shots have been heard. Somebody was seen threatening women in a parked car, had run. A first group of officers arrived, and then there's another group of officers that show up at the residence because they're told where this gentleman lives. They're walking around policing the area to look for shell casings. And then that's when Officer Verona, he arrives at the CPS lot, then he goes to the residence. He sees, I believe it's Officer Blackwell, knocking on the door for five minutes seeking entry. That's when he makes the decision that, I think we have exigent circumstances. We need to go in. So I don't think that the 15 or the 20 minutes are so long that the urgency evaporates. The issue that with respect to, because here we're on both, there's a summary judgment and a qualified immunity issue, right? Yes. And when you, in answer to Judge Lee's question, say maybe it's possible, why doesn't that, at least for our purposes on appeal, resolve the summary judgment issue that's before us? Well, the summary is that then suggests that a jury, for example, might view this as a set of facts that did not signify the existence of exigent circumstances. Well, I think that it's an interesting combination. It's a mixed question of fact and law. And I think as a matter of law, a 20 minute delay from showing up partially, some officer showing up at the residence, Officer Barona going first to the CVS. As soon as he gets to the residence, he makes the decision that we need to go in and he calls it in to his sergeant. So I think as a matter of law, this court can determine that exigency is still present at that time. I don't think the 20 minute wait or the delay is all that long. Maybe that's the answer to Judge Lee's question. And that's a legal issue at this point. So you're retreating from maybe it's possible. No, I think a 20 minute delay is not sufficient to eliminate the urgency or the exigency. The exigency is still present. So maybe the first group of officers made a mistake by not going in to the residence. We do know one of those officers, while they're looking around for spent shell casings, is banging on the door because at some point they determined that there's a trail of blood droplets that are leading from a car that's engine is still warm, blood in the console. And it's like the Hansel and Gretel breadcrumbs leading up to the front torch. And so that partially may explain part of the delay in getting, going into the, going into the apartment building. But officer Barone, as soon as he arrives on scene, knows what to do. And then you have to go in because we have somebody that took a gun, right? Whether he shot a gun or not, that part we don't know. We know that police were called, gunshots were heard. So that's what's going on in their heads, but somebody to take a gun and smash it through a window, a parked car window with three occupants, that's a very dangerous situation. And so for that reason, I think the officers at this stage of the game are entitled to qualified immunity because there's just no constitutional deprivation. However, if the 20 minute window is too long as a matter of the law, I don't think there's any case law from our circuit, from the Supreme Court that tells them that. So they're just not on reasonable notice as to what they were supposed to do under these circumstances. Because a good argument could be made that the six dormant factors that have been incorporated through McDonald in this, in this circuit, they're all present. They're all present. And I see that my time has expired. Thank you. Uh, good afternoon, your honors. My name is attorney Erskine McIntosh and I am here representing Mr. Shannon Calhoun. And I believe that the first judge that touched this case, um, as a criminal matter, um, had all of the answers and that was simply this, that there was no exigent circumstances under this particular set of facts and that all the police officers had to do was to stake out the house, get the balls rolling with respect to getting a warrant, that they could position someone in the backyard and the front yard and wait for that warrant to happen. Couldn't they imagine that something dangerous might take place in the meantime inside the house? Well, that is, can't you imagine a scenario under which they waited for 20 minutes, something did happen, something regrettable happened, and then they're accused of having been laying down on the job, basically, you know, not doing the I can imagine that these officers, um, possibly, uh, could have been motivated by their imagination to do something, but the law doesn't look to them. The law looks to what a reasonable police officer would do under the circumstances. And I believe that a reasonable, um, that the law is clear. First of all, there's no one, there was no sounds coming from that house for the entire time that the police were outside. There's no reason, reasonable reason to believe at that point that after 20 minutes, um, my client was in possession of a firearm that they claimed was used at the CVS pharmacy, none, that he could, the gun could have belonged to someone else, someone else could have been in his car, he could have passed it off. But it wasn't reasonable though, to, to believe that in fact he was, I mean, he's seen in possession of the gun. No question about that. And he, it appears at least from how the fact that I guess the vehicle is warm at the house. I mean, it seems as if there is a reasonable basis for them to believe he is in the house. And given that he's five minutes earlier seen in possession of the gun, he may or may not still be in possession of it, but is it really unreasonable for them to believe that he's still in possession of the gun? I'm sorry, I must have misheard you. Did you say, was it after five minutes or 20 minutes? Well, right. I'm saying if he's, he's seen in the position, in possession of the gun, I guess five minutes earlier at the CVS before they get to the, is it five minutes between when the shots occurred and when they get to the house? 20 plus minutes. There's a time elapsed of 20 plus minutes. Isn't that the 20 minutes? I thought the 20 minutes is after they get to the house. That's correct. That's correct. What I'm saying is when he's seen in possession of the gun, or he's seen in possession of a gun at the CVS, between the time of when the officers arrive at the house and there's a warm, apparently warm car in the driveway, it's, isn't it reasonable for them to think he's in the house and that if he is in the house, he is still in possession of the gun that he was seen with five minutes earlier? I mean, maybe he's not, but you're saying it's unreasonable for them to think he's still in possession of the gun? I believe that it's unreasonable for them to believe that. Yes. Because of the fact that number one, it's a two family house and we don't know, first of all, whether or not that gun was excreted to someplace else. Even if it were, even if the gun still was there at the home, the fact remains that under the law that's provided in this circuit, as well as the US Supreme Court, that exigent circumstances, the components don't add up in this particular case. And so then we have to ask ourselves, well, what exigent circumstance would that have been? Well, certainly not because of the fact that he committed vandalism or that he met or he threatened someone. And again, there's no facts below that indicate what the nature of the threat was. Well, no, someone, so there was a witness, as I understand, who saw him use his arm with a gun to smash into a car window. That would be vandalism. Not only describe the car roughly, and there was a, I understand the difference of opinion about that, but also gave the defendant's name and address. That's correct. That's how they found him. That's correct. But that's, but the bottom line is that's not hot pursuit. I'm not talking about hot pursuit. I'm just, you said something that seems to me to contradict the record. How about just the fact that he's got the gun? Why is that not, and I understand that you rely on the Harris case from a few years ago, but that arguably was a little bit different. Here you've got not just the possession of a gun, but the use of a gun, not to shoot it, but to use it to smash into a window. Why isn't that enough to show some real danger to somebody, including somebody inside the house? Well, first of all, we don't know that anybody was in the house other than the police don't know whether or not anybody was in the house at the time that Mr. Calhoun got there. Moreover, the cases that have looked at this particular problem have always indicated that, well, there was a fight going on between two specific people in the same location and that was not, that was not the case here. So I believe that the, again, not having any evidence that anybody in the home was being threatened or was a victim or could be a victim, no evidence of that, that they had to, and they should have, as Judge Underhill had indicated in the criminal trial court, that they had to basically, they could have, they should have waited. They should have gotten a warrant and that the nature of having a gun was not the exigent circumstances. Usually when they're talking about exigent circumstances and evidence, they're talking about destruction of evidence. So I don't think that that would fall here because usually destruction of evidence cases involve drugs or something can be flushed away or something like that, but if he's already committed a vandalism, if he's already committed a threat to someone, if that's factually accurate, then the next question is, well, the, is he a danger to somebody that's there? And that's, that's, I think where this case falls off. I really, that's where, that's what I believe. And I think that my brief expounds upon the specific circumstances where someone being in possession or alleged to be in possession of a firearm justifies a breach of a house of this nature. So your, your friend on the other side, at the very end, said something along the lines of, well, there was no, effectively no clearly established law that would make it clear to these officers, either Barona, Blackwell, and the others, that they could not, under those circumstances, breach the house. What is your response to that? I don't believe that the Supreme Court cases that are cited on that very question stand up to that, that there was no specific factual scenario that put these particular officers on fair notice, that their actions were illegal. And I think that the procurium opinion of Taylor versus Riojust at 141 Supreme Court, 52 at page 53, came out last year, addresses that question very clearly. And that is that the, there is no requirement that the actual fact of what happened here has to be one that has been, that has been addressed or adjudicated before. I direct the court to, in addition to that, the Hope Supreme Court case that I referred to earlier, that we expressly rejected a requirement that previous cases must be fundamentally insimilar. Although earlier cases involving fundamentally similar facts can be, can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. So you're, you're relying on, generally, this is such, this behavior is so beyond the Fourth Amendment bounds that it'd be clear we don't need a specific case. I'm sorry, I didn't hear you quite clearly. You're relying on the notion that as a general matter, this conduct by these police officers was so outside of the Fourth Amendment bounds that you don't need, it would have been obvious to anybody, you don't really need a decision. I believe that that's what I'm advocating. I think that I, that the general constitutional rule already identified in the decision of law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful, and that comes from, I believe, Anderson. Bear with me one second. What was quoted in, in the Hope, U.S. Supreme Court case, Hope versus Pelzer, in 2002. So I believe that that's my answer to that particular situation, that the going into someone's house, rushing in, as they did, so violated the Fourth Amendment that we don't need a specific case, as exactly was the issue in Taylor versus Reha Joss. Okay. Thank you. Thank you, Mr. Yes, just briefly, your honors. You know, if it's a situation like in Laurier, where it's a noise complaint, any reasonable officer should know that you just can't kick the door in because you're upset that the music is being played too loud. So in that case, I think officers, without having a formal decision like Laurier, are on advance notice, if that is a Fourth Amendment violation, not justified because there's no urgency present at all, at all. In Harris versus O'Hare, that's the St. Bernard that got shot. And, you know, there, the guns that, the tip that they received. That's our decision, right? Yes. Yes. And, and, and the tip that was received was that there were guns in an abandoned Nissan Maxima, right? There's no Nissan Maxima parked in the driveway. The guns were not used in an immediate crime, like is present in this case. But the case that's really interesting, I think, is United States versus Simmons, because they're analyzing the case facts, using the McDonald factors, a court found in a criminal matter that, yes, exigency isn't present because it's an event that occurred days before, the suspect was cooperative, he's in his underwear, we took him out of the bedroom, we put him inside of the hall, there's a police guard standing sentry so he can't get at the gun, he's cooperative, yeah, all of that, right? And so in those circumstances, for purposes of a suppression hearing and to suppress evidence, exigency doesn't exist. And ironically, there was a dissent. One of the judges on the panel dissented in sentence and made good arguments as to why he thought the McDonald factors were present. And that's the problem in this case, because in this case, officers did not have that much time and they have to sit and balance out all six factors. And what if they get them wrong? What if they get them wrong? Well, that's what qualified immunity is there to protect. If they get it wrong on a good faith error, right, not a noise complaint, but something like this, where the very women in the car identified Mr. Calhoun, and perhaps it bears some bearing on this matter, that once they did get the search warrant and they fully searched the house, what did they find? They found a TEC-9, an AR-15, a Glock, a Beretta. Well, certainly, though, what's recovered after the search is not relevant. Yes. I mean, that's true. I'm sorry. I don't mean to go too extensively there. But again, what they were told is somebody took a gun, smashed our windshield, and I'm sure the women in that car were terrified. I'd be terrified, right? The police did the right thing. And once they just secured him, they stopped. Let me ask you just very briefly about the protect—I'm sorry. Let me ask you very briefly about the protective sweep. Are you genuinely, seriously defending that, or are you abandoning that? I think the protective sweep's harder. I think the protective sweep's harder, because there does seem to be— I'm sorry, what was the word? What was the word? The protective sweep? The protective sweep, I think, is a little harder, because while they're entitled to do a protective sweep, there was some testimony that once they secured him— They kept searching. I think Officer Martinez may have walked out of the home. They're going beyond the drawers and everything else. So, okay. So that may need more factual development. I can understand that. But for purposes of the first count, which is that the Constitution was violated with the entry and the arrest, no, no. They had reasonable cause to be in there. But on the protective sweep, you could understand that. That I can understand, and that may be where the Court may have to divide it reasonably. Thank you so much. But otherwise, on the exigent circumstances, you're resting on the six factors of dormant, right? Yeah. And then I also think the thing about secreting the gun and destroying the gun— I mean, I think it's hard to destroy a gun, but there are other circuits, other courts that have found that they could theoretically destroy the gun. But I was thinking about this. If you remember in The Godfather, in Part 2, right? You know, the young Clemenza—he has a sack of guns and he throws it to the young Vito Corleone, right? And— Don Corleone destroys the gun and hides it. And he hides it. Yes. Which was a dramatic moment in the story because that's part of when he makes his decision to go the wrong way. But you can secrete guns easily, is the point. And I think that's a visual image that kind of sticks with you. So thank you. Thank you very much. We'll reserve the decision. We thank you both very much for your honesty.